UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DAVID A. WHEELER,

        Petitioner,

v.                                    Civil No.: 2:14cv29
                                      Criminal No.: 2:11cr36

UNITED STATES OF AMERICA,

        Respondent.


## OPINION AND ORDER

This matter is before the Court on David A. Wheeler's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255. ECF Nos. 303 & 304.[1] Petitioner's § 2255 motion and associated filings allege prosecutorial misconduct and allege that trial counsel provided constitutionally ineffective assistance. Having considered the briefs and record, the Court finds that an evidentiary hearing is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to the relief he seeks. See R. Gov. § 2255 Proc. in U.S. Dist. Cts. 8(a). For the reasons set forth below, Petitioner's § 2255 motion is **DENIED**.

---

[1] Petitioner filed a two page "placeholder" § 2255 motion approximately two-and-a-half months prior to filing his formal § 2255 motion. As both Petitioner's placeholder motion and formal § 2255 motion were timely filed, the Court previously construed them together, and ordered the Government to file a joint response. ECF No. 305.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner and multiple co-conspirators were named in a thirty-count superseding indictment charging a drug trafficking conspiracy. ECF No. 92. On September 14, 2011, at the conclusion of a criminal jury trial, the jury returned its verdict finding Petitioner guilty of four criminal felony counts, to include a cocaine trafficking conspiracy involving "5 kilograms or more" of cocaine. ECF No. 170. On January 31, 2012, Petitioner was sentenced to two hundred sixty-two (262) months of imprisonment.

Petitioner subsequently appealed his conviction, and the United States Court of Appeals for the Fourth Circuit affirmed Petitioner's conviction by unpublished opinion. United States v. Fuller, 498 F. App'x 330 (4th Cir. 2012). Petitioner thereafter timely filed the instant § 2255 motion, which is now fully briefed and ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that

2

the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id. A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue" may inform the resolution of the motion. Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999).

Although a petitioner advancing new claims asserted for the first time in a § 2255 motion must generally "clear a significantly higher hurdle than would exist on direct appeal" United States v. Frady, 456 U.S. 152, 166 (1981), a freestanding claim of ineffective assistance of counsel is properly asserted for the first time in a § 2255 motion. See United States v.

3

King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (citing Massaro v. United States, 538 U.S. 500, 504-06, (2003)).

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)) (emphasis added). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at

4

687-88.  "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test.  United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687.  Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687.  As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689.  Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the petitioner fails to prove either of the two prongs of the Strickland test, the Court need not evaluate the other prong of the test. United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

### III. DISCUSSION

Petitioner's § 2255 motion and associated filings allege: (1) the prosecutor committed misconduct by permitting multiple witnesses to perjure themselves on the stand; (2) trial counsel provided constitutionally ineffective assistance by failing to challenge such prosecutorial misconduct; and (3) trial counsel provided constitutionally ineffective assistance by failing to challenge the criminal charges and/or pursue a mistrial. As set forth below, all three of Petitioner's claims are **DENIED** on the merits.

### A. Prosecutorial Misconduct

Petitioner first claims that the Assistant United States Attorney that prosecuted the instant case engaged in misconduct by suborning the perjury of multiple witnesses. Petitioner's §

6

2255 motion focuses on the perjury allegedly committed by trial witness Clive Black, whereas his reply brief focuses primarily on the perjury allegedly committed by trial witness Andre Todd.

As explained by the Fourth Circuit:

> A conviction acquired through the knowing use of perjured testimony by the prosecution violates due process. See Napue v. Illinois, 360 U.S. 264, 269 (1959). This is true regardless of whether the prosecution solicited testimony it knew to be false or simply allowed such testimony to pass uncorrected. See Giglio v. United States, 405 U.S. 150, 153 (1972); Napue, 360 U.S. at 269. The knowing use of perjured testimony constitutes a due process violation when "'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Kyles v. Whitley, 514 U.S. 419, 433-34 (1995) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)).

United States v. White, 238 F.3d 537, 540-41 (4th Cir. 2001). Having considered the arguments advanced in Petitioner's initial motion, and the arguments advanced in his reply brief, the latter of which the Government has not had the opportunity to respond to, the Court finds that Petitioner fails to demonstrate that the prosecutor engaged in misconduct.

First, as to Petitioner's allegation that the Government knew that Clive Black testified falsely, Petitioner asserts that the trial record proves that investigating agents saw Clive Black in Virginia Beach, Virginia in the morning, the afternoon, and the early evening on February 24, 2009, but that Mr. Black stated under oath that he picked up a co-conspirator at an

7

airport in Washington D.C. on that same day. Petitioner's argument, however, is merely an identification of <u>potentially</u> conflicting trial evidence properly left for the factfinder to resolve. Notably, Petitioner's § 2255 motion does not point to any evidence in the trial record demonstrating what time of day Mr. Black was purportedly at the Washington airport, and it appears that there would be no "conflict" in the evidence if he were there around 10 p.m. that night. Similarly, Petitioner does not point to any physical evidence demonstrating that the night that Mr. Black and others were in Washington, D.C. was in fact February 24, 2009, as opposed to February 23, 2009. Accordingly, the mere existence of potential conflicts in the evidence falls far short of demonstrating that the Government knew that Mr. Black's testimony about a Washington D.C. drug transaction was "false" such that the Government had an obligation not to introduce such testimony.[2]

Second, as to the allegation of false testimony provided by Andre Todd, Petitioner again relies on an apparent "conflict" in

---

[2] Although more relevant to Petitioner's second claim, it should be noted that the jury was not left with the unchallenged testimony presented by Mr. Black regarding drug activities in Washington D.C. on February 24, 2009. Rather, Petitioner's counsel called two investigating agents as witnesses to establish Mr. Black's presence in Virginia Beach on February 24, 2009, in an effort to undercut Mr. Black's credibility regarding his and Petitioner's involvement in drug trafficking in Washington D.C. on that same date. The fact that the jury convicted Petitioner on Count 24, which is grounded in Mr. Black's testimony about the trip to Washington, suggests that the jury, like the Government, did not believe that it was "impossible" for Mr. Black to have been in Washington D.C. "on or about" February 24, 2009, as charged in Count 24 of the Superseding Indictment.

the trial evidence. Specifically, Mr. Todd was incarcerated during the summer of 2008, yet his trial testimony can be interpreted as indicating that he had firsthand knowledge about events that occurred during that same summer at a storage unit and at a house that was used as a "stash-house" by members of the conspiracy. Similar to the above analysis as to Mr. Black's testimony, Petitioner fails to specifically highlight any evidence demonstrating that the Government knew that Mr. Todd's testimony was false. A review of the transcript of Mr. Todd's direct and cross-examination indicates that he at times spoke of information of which he was "aware" without stating that he personally witnessed such events. Notably, a witness does not commit perjury merely because his testimony is based on hearsay. Additionally, on cross-exam, when confronted with the fact that Mr. Todd was incarcerated when a "raid" occurred on the storage unit and when a shipment of 1,700 pounds of marijuana had come into the Hampton Roads area from Texas, Mr. Todd testified that "[t]he time frames may be different" but that he had "knowledge of 1,500 pounds of marihuana[3] being in the [stash] house" because he temporarily "lived in that house" and he "actually saw the marihuana." Trial Tr. 559, ECF No. 204.

---

[3] Although the Court uses the term "marijuana," the Court also recognizes "marihuana" as an acceptable spelling.

Based on a review of the transcript, there are multiple possible interpretations of Mr. Todd's testimony, because while one could interpret it as including false statements about drug activity that Mr. Todd never witnessed, one could also interpret the testimony as Mr. Todd being imprecise with the phrasing of his answers, or Mr. Todd having some difficulty distinguishing which events he knew from first-hand knowledge and which he learned of only through hearsay. What is clear, is that Mr. Todd testified that he recalled personally witnessing 1,500 pounds of marijuana at the stash house after he was released from incarceration. Petitioner's contention that the record proves that Mr. Todd was lying on the stand leaves no room for the possibility that: (1) Mr. Todd was mistakenly over-estimating the quantity of marijuana that he personally witnessed at the stash-house after his release; (2) there was still a quantity of marijuana close to 1,500 pounds in the stash-house at the time Mr. Todd was released from incarceration since approximately 200 pounds were seized by authorities during the raid of the storage unit in late July 2008 and the trial record indicates that all conspirators were having trouble selling the marijuana because the quality was so poor, Trial Tr. 277-78, ECF No. 203; or (3) the large-scale drug conspiracy also involved a second large marijuana shipment that occurred after Mr. Todd was no longer incarcerated. Even assuming that the

10

Government was unclear about whether Mr. Todd saw the remains of the first marijuana shipment, or whether a second large shipment occurred without the Government's knowledge, such lack of clarity is a far cry from the Government knowing that Mr. Todd was providing false testimony. Because Petitioner fails to demonstrate that Mr. Todd testified falsely and/or that the Government knew that such testimony was false, he fails to demonstrate prosecutorial misconduct.[4]

For the reasons set forth above, Petitioner's first claim is **DENIED**.[5]

---

[4] Additionally, even if the Court assumed that the Government had knowledge that Mr. Todd testified falsely about the 1,500 pounds of marijuana, Petitioner does not appear to demonstrate that there is "any reasonable likelihood" that such false testimony could have affected the jury's verdict. White, 238 F.3d at 540-41. Numerous other witnesses testified about Petitioner's involvement in the drug conspiracy as a whole as well as his specific involvement in the 1,700 pound marijuana transaction that was focused on extensively at trial. Moreover, the Government introduced photographic evidence in support of their case against Petitioner, including photographs and testimony linking Petitioner to vehicles that had secret compartments operated by hydraulics that were used to transport drugs or large sums of cash.

[5] The Court also notes, for the record, that Petitioner's first claim appears to be procedurally defaulted pursuant to the rule set forth in Frady, 456 U.S. at 167-68, as it was not raised on direct appeal. Petitioner's motion and associated filings do not appear to demonstrate "cause" excusing the failure to directly appeal this issue or "'actual prejudice' resulting from the errors of which he complains." Id. However, because the Government has not raised procedural default, the Court does not squarely reach such issue herein. Cf. Yeatts v. Angelone, 166 F.3d 255, 261-62 (4th Cir. 1999) (discussing, in the context of a § 2254 motion, the court's authority to raise procedural default sua sponte, indicating that doing so may not be appropriate without giving the petitioner "a reasonable opportunity to present briefing and argument opposing dismissal") (internal quotation marks and citations omitted).

### B. Ineffective Assistance - Prosecutorial Misconduct

Petitioner's second claim is similar to his first, although in his second claim Petitioner asserts that his counsel was ineffective for failing to move to strike the testimony of Mr. Black and/or Mr. Todd due to the fact that the Government purportedly suborned perjury. Adopting the analysis above, first, the Court finds that Petitioner fails to demonstrate that the Government knowingly introduced false testimony, or knowingly permitted false testimony to stand, because Petitioner fails to demonstrate that Mr. Black or Mr. Todd committed perjury. Accordingly, Petitioner fails to demonstrate constitutionally deficient performance or resulting prejudice as a result of counsel's failure to move to strike such testimony. Strickland, 466 U.S. at 689, 693-94; see Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (finding that counsel was not constitutionally deficient for failing to file a motion that was not likely to succeed).

Second, even assuming that the Government knowingly introduced false testimony, Petitioner fails to demonstrate that his counsel provided constitutionally deficient performance as a result of his failure to move to strike such testimony. Notably, as Petitioner acknowledges in his § 2255 filings, Petitioner's trial counsel did not permit the testimony at issue to go unchallenged, but instead, focused his defense on

12

undercutting the credibility of both Mr. Todd and Mr. Black based on the purported timeline issues.[6] As to Mr. Black, Petitioner's counsel called two investigating agents as witnesses in an effort to establish that, on February 24, 2009, Mr. Black was in Virginia Beach, not Washington, D.C. Trial Tr. 1089-92, ECF No. 206. Counsel then relied on the alleged discrepancy in the timeline both to seek dismissal of Count 24 and to argue before the jury that Mr. Black was lying. As to Mr. Todd, Petitioner's counsel focused a large part of his cross-examination on undercutting Mr. Todd's credibility based on the fact that, during his direct examination, Mr. Todd purportedly gave a "firsthand account" of matters that occurred while he was incarcerated. Trial Tr. 556-60, ECF No. 204. Later, during closing arguments, Petitioner's counsel again sought to discredit Mr. Todd by focusing on the asserted issues with Mr. Todd's timeline. Trial Tr. 1239-40, ECF No. 207.

Considering the options available to counsel at the time, it was plainly a sound strategic decision for defense counsel to opt to leverage the allegedly false testimony as a means to argue to the jury that Mr. Black and Mr. Todd lacked credibility as witnesses. Id. at 1236-40. Moreover, Petitioner fails to

---

[6] Moreover, as discussed in greater detail below, Petitioner's counsel did in fact join in a motion filed by counsel for one of the co-defendants to have all of Mr. Black's testimony stricken based on its unreliability. Trial Tr. 1013-14, ECF No. 206.

13

demonstrate that a motion to strike Mr. Black's or Mr. Todd's testimony stood a reasonable likelihood of success. Notably, Petitioner's Rule 29 motion as to Count 24, made at the conclusion of the trial evidence, argued that such Count should be dismissed due to Mr. Black's credibility issues—the Court held that any discrepancies in the testimony were for the jury to decide. A motion seeking to strike Mr. Black or Mr. Todd's testimony would almost certainly have met a similar fate as the Rule 29 motion. Petitioner therefore fails to demonstrate either that his lawyer was constitutionally deficient or that any deficiencies in counsel's representation had a "reasonable probability" of impacting the result of the proceedings. Petitioner's second claim is **DENIED**.

## C. Ineffective Assistance - Failure to Challenge Adequacy of Trial and Verdict

Petitioner's third and final ground for relief is not fully developed in his initial filings, although some limited detail is arguably provided in his reply brief. Such claim is construed by the Court as alleging that counsel was ineffective for: (a) failing to pursue dismissal of Petitioner's charges or seek a new trial (b) refusing to file a complaint and demand inquiry into the alleged misconduct of the prosecutor; and (c) failing to file a motion for a mistrial and/or seeking to recall

14

Mr. Black to testify about an out-of-court statement that Mr. Black purportedly made during the course of the trial.[7]

As to Petitioner's assertion that his lawyer failed to pursue dismissal of Petitioner's charges or seek a new trial, such claim is factually inaccurate because counsel sought dismissal of all charges at the close of the evidence and filed a post-trial motion after the jury's verdict seeking "judgments of acquittal" and/or a "new trial." ECF No. 182. This argument is therefore denied.

As to Petitioner's assertion that his lawyer refused to file a formal complaint against the prosecutor, for all the reasons discussed above, there is plainly insufficient evidence to demonstrate prosecutorial misconduct that would warrant the filing of such a complaint. The record not only fails to demonstrate that witnesses provided intentionally false testimony, but arguably does not even prove that inaccurate material statements were made by Mr. Black or Mr. Todd, as the precise date and time of Mr. Black's trip to Washington D.C. is unknown, and Mr. Todd's testimony is subject to multiple interpretations. Such argument is therefore denied.

---

[7] The Court analyzes such largely undeveloped claims out of an abundance of caution, though such claims could likely be dismissed on their face. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.") (internal quotation marks and citation omitted).

As to Petitioner's assertion that his lawyer failed to move for a mistrial, such claim appears to be based on the issue that arose at trial regarding Mr. Black's purported statement on the courthouse steps to an attorney for one of the co-defendants that was tried alongside Petitioner. According to the attorney's representations to the Court, Mr. Black stated that the attorney should "Tell Sammy they forced me," presumably making reference to Mr. Black's testimony against co-defendant Samuel Lloyd. Trial Tr. 847, ECF No. 206. Mr. Black was later questioned, outside the presence of the jury, and he admitted talking to the co-defendant's lawyer while waiting in line to enter the courthouse, but denied making any statement about being forced to do anything. Id. at 1005-08.

A review of the trial transcript reveals that counsel for one of Petitioner's co-defendants made a motion seeking to preclude Mr. Black from testifying further in the case and also moving that his entire trial testimony be stricken due to its unreliability. Id. at 1013-14. Notably, Petitioner's counsel joined in such motion, id. at 1014, and the Court reserved such issue for later resolution. The next day of trial, the Court was informed that the parties had worked out a stipulation to be read to the jury, which stated as follows: "Yesterday morning, Clive Black stated the following to court personnel: 'Tell Sammy that they forced me to do it.'" Trial Tr. 1159, ECF No. 207.

16

Although such stipulation left unresolved the question of whether Mr. Black had made a false denial under oath while outside of the jury's presence, it provided additional evidence which, depending on how it is interpreted, could be viewed as undercutting Mr. Black's credibility. See Fuller, 498 F. App'x at 332 (concluding, in the opinion jointly addressing Petitioner's and his two co-defendants' direct appeal, that "[t]he stipulation was a reasonable solution that allowed the defendants to further impeach Black's testimony," and that after the stipulation was reached, there was "no error" by this Court in failing to declare a mistrial, sua sponte).

In line with the Fourth Circuit's analysis on direct appeal, Petitioner's counsel's decision to agree to the stipulation was a reasonable strategic decision because it provided additional evidence that could be interpreted as further impeaching Mr. Black's testimony. Id. Had defense counsel opted to recall Black as a witness so that counsel could have inquired into his alleged "false denial" of such statement, the jury might have believed that Mr. Black never made such statement, and that he had been misheard because of his Jamaican accent. Even worse for the defense, the jury could have concluded that the lawyer representing Petitioner's co-defendant was willing to fabricate evidence to help his client, a conclusion that could bolster the Government's case against all

17

three co-defendants. The soundness of counsel's strategic decision to forgo such risks and rely on the stipulation are not in any way undercut by Petitioner's conclusory statements in his reply brief. See United States v. Dehlinger, 740 F.3d 315, 325 (4th Cir. 2014) ("The Sixth Amendment does not provide a basis for disappointed clients to launch after-the-fact attacks on the objectively reasonable strategic decisions of their trial attorneys."); Strickland, 466 U.S. at 689 (explaining that because it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Likewise, even if counsel should have recalled Mr. Black, Petitioner fails to demonstrate that doing so would have had a reasonable probability of changing the outcome of the case.

This Court's conclusion is no different with respect to counsel's decision not to pursue a mistrial, particularly because this case did not involve a prejudicial "event" whereby the jury saw or heard something that tainted the integrity of the trial. Rather, the issue about what occurred on the courthouse steps was addressed outside of the jury's presence, and did not impact the fairness of the trial process. At the

18

time the courthouse steps issue arose, Petitioner's counsel had already secured trial testimony that, depending on its interpretation, called the reliability of Mr. Black's and Mr. Todd's testimony into question. Such testimonial "inconsistencies" may have been less pronounced at a second trial, putting Petitioner in a worse position. Accordingly, counsel's decision to proceed to verdict with not only testimony that created credibility questions, but also a stipulation that arguably further undercut Mr. Black's credibility was a reasonable strategic decision in light of the circumstances. See United States v. Chapman, 593 F.3d 365, 368 (4th Cir. 2010) (indicating that moving for a mistrial is inherently a strategic decision and involves consideration of "numerous alternative strategies such as remaining silent, interposing an objection, requesting a curative instruction, or requesting an end to the proceeding" (internal quotation marks and citation omitted)); Goins v. Angelone, 52 F. Supp. 2d 638, 663 (E.D. Va. 1999) ("The Strickland standard mandates considerable deference to trial counsel's strategic choices, whether or not those choices are ultimately successful.").

For the above-stated reasons, all subparts of Petitioner's largely undeveloped third ground for relief are hereby **DENIED**.

19

## IV. CONCLUSION

In sum, all of the claims contained within Petitioner's § 2255 motion, filed in piecemeal fashion on two different dates, lack merit. Petitioner's motion is therefore **DENIED**. ECF Nos. 303 & 304.

Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right" as to any of his claims, a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**. 28 U.S.C. § 2253(c)(2); see R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, and the United States Attorney's Office in Norfolk, Virginia.

IT IS SO ORDERED.

_____  /s/
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 27 , 2015